BENTLEY *vs.* THE COLUMBIA INSURANCE COMPANY OF
PHILADELPHIA.

An authority to a sub-agent of an insurance company, to receive applications for
insurance and forward them to a general agent, and to make the insurances
binding until the general agent shall affirm or disaffirm them, does not include
a power in the sub-agent to take and receive an application from *himself*, for
an insurance upon *his own property*, so as to bind the company.

An agent of an insurance company, however broadly his authority may be ex-
pressed, has no power to act for himself. He cannot make a contract in which
he acts directly for himself and also as agent for the company.

THIS action was brought to recover the amount of the plain-
tiff's loss by fire, upon a policy executed by the defendants,
dated 26th February, 1848. The cause was tried before his
honor, Judge EDWARDS, and a jury, on the 21st March, 1851,
when a verdict was rendered in favor of the plaintiff, for
$4,797.98, subject to further argument upon the questions of law
reserved. The defendants, being a foreign corporation, created
by an act of the legislature of the state of Pennsylvania, and
authorized to make insurance against loss or damage by fire, es-
tablished an agency for the transaction of such business, in the
city of New York, and in February, 1846, they appointed, as their
general agent, Benjamin S. Whitney, who entered upon his du-
ties, and advertised himself as their agent to attend to the bu-
siness of insurance. He continued to be such agent until July,
1848. The course of the defendants' dealing with their agent,
Whitney, was to send to him some fifty policies at a time,
signed by the president and secretary, with the corporate seal
attached, to be filled up, countersigned, and delivered by him to
the persons insured by the defendants through him. He was to
be, and was, the judge of the propriety of the risks offered, and
was not required to report, and did not report, the same to the
defendants for approval, before completing the contract. If he
approved of the risk, he filled up, countersigned and delivered
the policy to the assured, and received and accounted for the
premium therefor. In order to extend their business, Whitney,
with the knowledge of the defendants, employed sub-agents, in
different places, to receive applications for insurance, and report

the same to him.   These sub-agents were authorized to receive applications for insurance, take risks, and make them binding upon the company, until reported to, and refused by him.   If not rejected by Whitney, a policy was then filled up, according to the application, countersigned, and by him delivered to the assured.   This course of business was known to, and approved of, by the defendants.   In one or more instances, besides the one in question, it happened that a loss occurred before the policy was issued, which the company paid.   Among other sub-agents so appointed by him, Whitney, on the 10th December, 1847, appointed as his agent the plaintiff, (who was a commission and forwarding merchant, residing at Albany,) and gave him authority to take risks, and make them binding upon the defendants, until reported to him, and notice of his rejection of the same. Under such authority, the plaintiff took risks, which he reported to Whitney, and which were uniformly approved.   The defendants knew that he had been appointed agent, with these powers, and acquiesced therein, and received the premiums paid upon risks taken by him.   Whitney was also the general agent for the Camden Insurance Company, and in like manner appointed agents under him for that company, amongst whom was the plaintiff.   Being such agent of both companies, the plaintiff took a risk of his own for $2000, for one year, in the Camden Insurance Company, on the 26th February, 1848, and on the same day he took another of his own, amounting to $4000, for two months, with the defendants.   This latter risk for himself was taken at the usual rates of premium, and was entered in the usual form, and according to his usual course of business, in the insurance book kept by him for that purpose, and where he entered other risks.   On the same day the plaintiff addressed to Whitney a letter notifying him that he had insured his stock for the coming year in the Camden office, and that he had taken $4,000 risk for two months with the defendants.   This letter, which contained a copy of the entry of the risk in the insurance book, was received and read by Whitney prior to his hearing of the loss, and at about 10 A. M. of the 1st of March, at which time he duly considered and accepted the risk.   About one o'clock

Bentley *v:* Columbia Insurance Company.

A. M. of the same 1st March, a fire occurred in the second building from the premises in question, which extended to, and consumed the one occupied by the plaintiff; notice of which fire was communicated to Whitney by telegraph about 2 P. M. of the same day, and after full consideration, and considering the risk to have been fairly taken on the 26th of February, he concluded that the plaintiff was entitled to a policy therefor, and accordingly on the 2d March he filled up, countersigned and delivered to the plaintiff's agent one of the policies so sent to him by the defendants, being the one upon which this action is brought. Whitney never in any way objected to the risk, but approved of the same, and even after notice of the fire he recognized it as a valid risk. He received the premium therefor, and accounted for and paid over the same to the defendants, and offered to settle the loss by paying part cash and part in drafts.

*M. S. Bidwell*, for the plaintiff.

*E. S. Van Winkle*, for the defendants.

*By the Court*, MITCHELL, J. It has become familiar law that incorporated companies may contract by parol; and may therefore, like private individuals, appoint their agents by parol; and that the fact of the appointment, and the extent of the authority conferred, may, as in the case of private individuals, be established by proof of the acts of the alleged agent, known to and ratified by the company. In this case it was shown that Whitney was the agent of the defendants, and that policies were left in his custody, to be valid and binding upon the company on his countersigning them. It was also proved that when Whitney was at the office of the defendants, in Philadelphia, in the presence of the president and directors of the company, and talking of the course of his business, it was stated that he employed sub-agents to take and secure risks for the company; and that by so doing he was enabled to increase his business, and do more for the company; that the sub-agents received applications and made them binding from the date of the application until

they were reported to him, and he gave notice whether he declined them. No objection was made by any officer of the company to this course of proceeding on the part of Whitney. The company therefore knew that he was in the habit of employing sub-agents, who received applications and made them binding on the company from the date of the application until they were reported to Mr. Whitney, and he affirmed or disaffirmed them. Consequently the company sanctioned and ratified the practice of Whitney in appointing such sub-agents; and that sanction gave as much validity to the appointment as if it had been made directly by the company. Whitney appointed Bentley, the present plaintiff, " agent of this company to *take and secure applications* for the *company*, and forward the same to Whitney, to be made out and sent according to the orders received at Whitney's office." This was in writing; and if it limited Bentley's authority, so that he should only receive applications and submit them to Whitney, yet this private instruction would not affect third parties, who would be guided by the acts of Bentley approved by the company. So that it must be assumed that Bentley had power to receive an application for insurance, and make it binding until Whitney should affirm or disaffirm it.

On the 28th of February, 1848, Bentley wrote to Whitney, as agent of the Columbia Insurance Company, that he wished $4000 for two months on flour, grain and country produce, his own or on storage or commission, in his brick store on Quay street, Albany. He also made an entry, at the same time, in the book which he kept as the agent of the company, of the insurance as effected on the 26th of that month. His letter to Whitney also showed that the insurance was to take effect on that day. The letter did not reach Whitney until after 10 o'clock on the 1st of March following, and when it was read by Whitney, (according to the testimony of Mr. Thompson, although contradicted by Whitney,) Whitney said he approved of the risk for the defendants. About 2 o'clock in the afternoon of the 1st of March, intelligence was received in New York that the plaintiff's buildings were destroyed at about 1 o'clock

that morning by fire. Their contents were also destroyed with them. No communication of any kind was made by Whitney to the plaintiff until some days after this, when Whitney " in view of his having previously given authority to Bentley to act as sub-agent, and the influence brought to bear in Bentley's favor, by Bulkley and James, was induced to make out the policy, enter it in the register and countersign and deliver it." So that until after knowledge of the fire no ratification of the policy was made by Whitney, and then it was done only under the idea that he was bound to do so, as he had previously given Bentley authority to act as sub-agent; or, in other words, under the idea that as Bentley was sub-agent, he, Bentley, could take and receive applications from himself and make them binding on the company from the time he took them until the company, through Whitney, should disaffirm them; so that if a fire should happen in the interval, the company should bear the loss. This idea of his was on the supposition that an authority to an agent to take and receive applications for insurance and secure them for and against the company, until disapproved, included a power in the agent to take and receive such applications from himself and secure them for himself, against the company. The plaintiff's success depends on his ability to sustain this supposition. For after the fire was known to Whitney it is admitted that he, as agent, had no power to insure the property, and none to give a policy, unless in pursuance of a previous contract to give one, binding on the company. Is such a contract binding on a company?

Some principles applicable to the law of principal and agent, as between individuals, were stated to be familiarly applied also between companies and their agents. Another, equally familiar in the case of individuals, is equally applicable between companies and their agents : it is that the agent, however broadly his authority may be expressed, in any general terms, has no authority to act for himself. He cannot make a contract in which he acts directly for himself and also as agent for the company. The company (his principal) selects him to act as its agent, that through him they may have the benefit of the one-sided feeling

which will lead him to look to their interest, only as a counter-poise to the one-sided feeling which it is apprehended the insured will have, and who, it is supposed, will look to his interest only, regardless of that of the company. The agent is to obtain *for* the company the highest rate of premium that may be fairly charged, and to avoid dangerous situations, buildings and properties, unless he receives a high premium that may be commensurate to the extra risk. The insured, on the other hand, will press for the lowest rate of premium, and as far as he honestly may, will naturally undervalue the dangers of situation, or of the building, or of its contents. The same person cannot, in such circumstances, act for both parties, and in whatever terms the authority to him may be, if it do not expressly authorize him to act for the principal, it cannot be intended to authorize him to act for both. An authority to a land agent to sell land in such lots and at such prices as he may deem fit, would not authorize him to sell to himself, at any price. An equally broad authority to a broker to sell stock would not authorize him to sell any of it to himself. So here, the authority to Bentley to receive applications or make insurances would not sanction or give any effect to an insurance made by him, for himself. His temptation would be to put the premium too low, and to insure even if the situation was so dangerous that the company would not have approved of it. In fact, in this case, the temptation had just that effect, although perhaps unconsciously to the plaintiff. He charged himself only 13 cents for two months. Whitney says he would not have accepted the risk had the fire not occurred, and that his objection was based on the low rate of premium. And that "had it not been for the written authority given (by him) to Bentley binding all risks which he might take, he never would have received the policy; it would have been promptly declined because the premium was too low, and for the reason that the company opposed Whitney's taking risks at such rates, and out of the city particularly.

The company meant to have the benefit of Bentley's watchfulness for their interest in all contracts that he should make—

Bentley *v.* Columbia Insurance Company.

a watchfulness to be not merely disinterested, so that he should have no bias for the insured, against them, but prompted by that interested feeling which one has when acting for himself or for a principal whom he values as much as himself. The plaintiff deprived the company of this advantage, and should bear the loss that results from his own illegal, though probably not ill-meant act. It is better for him now to lose than by his success to subvert or impair the extent of a healthful rule of law.

The language of the authority to Bentley also excludes the idea of his acting for the company when he was the insured. It is " to *take* and *secure* applications," or to *receive* applications and make them binding. When an application is made, there is one to apply and another to be applied to. So when any thing is taken or received, there is one to take or receive and another to give or render.

If, as Thompson states, (but which is contrary to Whitney's statement,) Whitney, when he received Bentley's letter, said he approved of the risk, for the Columbia, and said it before he knew of the fire, this did not make a contract binding on the company. It was a mere casual remark, not made to any one acting for the plaintiff or defendants, not reduced to writing, and not communicated to the plaintiff. He also, as agent, had no right to let another sub-agent insure for himself and then approve the insurance, until he had exercised his own judgment as to the expediency of the risk and the amount of premium to be paid. This he could not have done when he made this casual remark. When he afterwards exercised his own judgment, it was that he would not have taken the risk for the company, because the premium was too low, and for other reasons before stated.

Without going over other objections to the plaintiff's right to recover, these are deemed sufficient. This objection is included in the 3d request to charge, and according to it judgment should be for the defendants, or a new trial be granted.

[NEW YORK GENERAL TERM, April 9, 1855. *Mitchell, Roosevelt* and *Clerke,* Justices.]