May Term,
1856.

GUARD
v.
BRADLEY.

Guard and Others *v.* Bradley and Others.

Where an instrument under seal specifies a consideration upon which it is founded, the obligor is estopped from saying that it was without consideration.

The unconditional delivery of a bond to a third person, for the use of the obligee, and the subsequent acceptance of it implied by bringing a suit, show sufficiently a delivery to the obligee.

An acceptance of a deed by the obligee, may be presumed from the beneficial nature of the transaction.

Where a contract has been made by one competent to contract on behalf of an infant, and a full consideration has actually been paid, the infant may sue in equity for a specific performance.

Thursday,
June 12.

APPEAL from the *Dearborn* Circuit Court.

GOOKINS, J.—This was a bill in chancery filed by *Mary Jane* and *Margaret Bradley*, infants, by their next friend, against *Mary*, the widow, and *Timothy, James, Simeon, David* and *Mary Jane*, heirs of *Ezra Guard*, deceased. The plaintiffs were heirs at law of *Rachel Bradley*, another daughter of *Ezra Guard*, who died before her father. There are some parts of the bill which it is unnecessary to state. They relate to a transaction between the father of the plaintiffs and *Ezra Guard*, on which no proof was offered, and which, if proved, would have added nothing to the principal case made by the bill, which is substantially as follows:

It is alleged in the original and supplemental bills, that in 1847, *Ezra Guard* was the owner of real estate in this state and in *Ohio*, of the value of 30,000 dollars; that previous to his death he made to his five living children two deeds, by which he conveyed to them all his lands, for the consideration of natural love and affection; that at the time of making said deeds, they agreed with *Ezra Guard* to execute to the plaintiffs a bond, conditioned for the payment to them of one-sixth part of the value of the estate so conveyed to them, after deducting the debts of *Ezra Guard*, when they should attain the age of twenty-one years, which was a part of the consideration of, and a moving inducement to, the execution of said conveyances,

without which the latter would not have been done; that said bond was signed by a part only of said heirs, and that the others, since the death of *Ezra Guard*, refuse to execute it. They claim that the conveyances were in the nature of a testamentary disposition of the property of the grantor, in immediate prospect of death, and that the grantees took the estate subject to the charge mentioned in the bond. They allege that the defendants have concealed the bond, and pray a discovery of it; that the defendants be required to perform its conditions and secure to the plaintiffs the provision stipulated for, and for general relief. The supplemental bill states the death of *Simeon*, one of the grantees, intestate, and without issue, in consequence of which his share of the estate descended to his mother, brothers and sister, and to the plaintiffs as heirs of their mother, deceased.

The answers, which were upon oath, admit the death of *Ezra Guard*, the heirship of the several parties, as averred, and the conveyances as stated in the bill, but deny the agreement to make the bond mentioned, or that it constituted any part of the consideration of the deeds. They state that after the deeds had been executed, by signing, sealing, acknowledging and delivery, and when the conveyancer who drew them was leaving the house, at the instance of the mother he was called back, and was requested to write a paper for the benefit of the plaintiffs; that he thereupon drew up an instrument, similar in effect to that mentioned in the bill; that it was done solely at the instance of the mother; that *Ezra Guard* made no requirement upon them, but left it to the option of the defendants to sign it or not, as they pleased; that thereupon three of them, *Timothy*, *Simeon* and *David*, signed it, and the other two did not; that it was left with the mother; that all this was done voluntarily on the part of those who signed the paper, without any consideration, and after the conveyances by *Ezra Guard* had operated to pass the title, without any condition annexed. They insist that it was wholly void for want of a consideration. They deny having seen

it since its execution, and say it has been lost by the mother.

The only evidence necessary to notice, is that which relates to the execution of the two deeds, and the bond. On these points *Mary Guard*, the mother, and Mr. *Brower*, the conveyancer, who was also a notary, were the only witnesses examined. Their testimony establishes the following facts:

On the 5th of *February*, 1847, *Ezra Guard*, who resided in the country, sent a messenger to *Lawrenceburgh* for Mr. *Brower*, requesting him to come to his house to do some writing for him. He arrived near night, and found Mr. *Guard* sick of consumption, and in near prospect of death. By his directions, communicated mostly through the wife, Mr. *Brower* drew two deeds, conveying all the grantor's real estate to his five living children, the consideration in each deed being natural love and affection and one dollar. The examination of titles and writing occupied that evening and a considerable part of the following day. It was done in a different room from that in which the grantor lay. When the deeds were ready for signing, Mr. *Guard* arose; they were carefully read to him; he commented upon their contents occasionally during the reading; and at the close, signed and acknowledged them, and was assisted to his bed. *James*, one of the grantees, was absent at the time; the other four children were at home, were in and out during the writing, but are not shown to have said or done anything in connection with the business. Some of them were in the room when the deeds were signed and acknowledged. It was necessary that Mr. *Brower* should take the deeds home with him, for the purpose of affixing his notarial seal to the certificate of acknowledgment, and it was the understanding of the parties, *Ezra Guard* and such of the grantees as were present, that he should do so; and that he should then deposit them with the recorder for record. There was no manual delivery of the deeds to the grantees. Mr. *Brower*, with the deeds in his possession, had put on his over-coat and bidden Mr. *Guard* good bye, and was leaving the house, when he was recalled by Mrs. *Guard*.

On turning round, Mrs. *Guard* was seen conversing in a low tone with her husband. He was asked either by Mr. or Mrs. *Guard* to write some instrument for the benefit of the plaintiffs; to which Mr. *Brower* replied that Mr. *Guard* had made deeds of the property to the other heirs, and that the deeds passed the title to them; but that they could make any arrangement they chose, and he could draw whatever was wanted. *Timothy Guard* was present. After some conversation between the parties, Mr. *Brower* proceeded to draw up a bond or agreement, which recited the conveyances to the five heirs as the consideration, and provided that the grantees in the two deeds should pay to the plaintiffs one-sixth of the value of the estate so conveyed, after all the debts and liabilities of the grantor were paid, when the plaintiffs became of age, should they live so long. The instrument was under seal. It was read over by Mr. *Brower*, and was signed by *Timothy, Simeon* and *David.* The latter was an infant at the time, as was also *Mary Jane*, who did not sign it. It was taken possession of by Mrs. *Guard*, and has not since been seen by any of the parties, except by Mrs. *Guard*, and only once by her, who testifies that it is lost. Before *Ezra Guard's* death, *James* refused to sign the paper; but it is not shown that that fact was known to *Ezra Guard*. Mr. *Brower* took the deeds to *Lawrenceburgh*, affixed his seal to them, and left them for record. Five days after these transactions, *Ezra Guard* transferred to his sons *Timothy, Simeon*, and *James*, bank stock of the value of 2,160 dollars, and on the following day died, leaving no personal property of consequence.

Up to the time of Mr. *Brower's* setting out to leave the house as above stated, no mention had been made of the plaintiffs. They were then infants of the ages of seven and two years. The bond was never formally delivered to them. It was called for by their father, a few days after Mr. *Guard's* death, but Mrs. *Guard* refused to let him see it. Mr. *Brower* thinks that when he was asked if he could draw a paper for the benefit of the plaintiffs, and he replied that the deeds passed the title, and that whatever was done

would have to be done by the grantees, Mr. *Guard* replied, that he had deeded the property to them, and they might do so if they wished; but of this he does not speak with certainty.

*David Guard* was of age when he answered. He does not plead his infancy.

The cause was tried at the *May* term, 1853, of the *Dearborn* Circuit Court, the practice act of 1852 being then in force. All the proceedings previous to the trial were had under the former statutes.

The Circuit Court adjudged the equity of the case to be with the plaintiffs; that if the grantees claimed to hold under the deeds to them, they ought to take subject to the conditions and provisions of the bond signed by *Timothy*, *David* and *Simeon*.

The defendants thereupon elected to take and hold under said deeds, but insisted upon holding exempt from said charge, whereupon final judgment was given, charging the lands conveyed with the burden of the said bond, in favor of the plaintiffs. Other parts of the judgment, not varying its effect, need not be stated, no complaint being made of them.

The appellants attack this judgment chiefly on the ground that the deeds from *Ezra Guard* had operated to pass the title in the lands to the grantees, by delivery, and that they were beyond the control of the grantor, before anything was done in reference to the bond from the grantees to the plaintiffs. The appellees answer, that all that occurred before Mr. *Brower* left the house, as before related, should be regarded as one transaction; that the possession of the deeds by the conveyancer, was the possession of the grantor, until the deeds were delivered for record; that until that was done, he had a right to arrest his hand, at any time, and to annex to the grant any condition he chose; and that he did, in fact, annex such condition, before the deeds operated to pass the title.

Whatever the order of events may have been, in regard to the execution of the deeds and the bond, the view we take of the case requires that they be laid out of the ques-

tion.  The appellants insist that the bond was without
consideration, and that, being merely voluntary, a Court of
equity will not enforce it.  We have no doubt upon the
point that a Court of equity will not enforce the specific
execution of a contract merely voluntary and without
consideration, at the instance of a volunteer.  *Tufnell* v.
*Constable*, 8 Sim. 69.—*Edwards* v. *Jones*, 1 Mylne & Craig
226.—*Story's* Eq. Jur., s. 706, and authorities in note.  But
are the obligors in the bond in an attitude to claim the
benefit of that rule?  We think they are not.  This bond
or agreement under seal states that the consideration
of it is the conveyance made to the obligors by *Ezra
Guard*.  By this recital they are estopped, and can not
say it was without consideration.  *Trimble* v. *The State*,
4 Blackf. 435.—*May* v. *Johnson*, 3 Ind. R. 449.

The appellants object that the bond was executed by a
part only of the heirs of *Ezra Guard* to whom the lands
were conveyed; and that therefore it was not obligatory
upon any of them.  No doubt, if a party execute a bond
with an express condition that it is not to be operative un-
til signed by others, he may insist that it is not his deed.
*Pawling* v. *The United States*, 4 Cranch 219.  But no such
condition, nor any condition, was expressed when this bond
was executed; and we think its execution was complete
by those who signed it.  The obligees were not present;
but an unconditional delivery to the grandmother for their
use, and their subsequent acceptance of it, especially by
bringing this suit, were sufficient.  Besides, their accept-
ance may be presumed from the beneficial nature of the
transaction.  *Souverbye* v. *Arden*, 1 J. C. R. 240.—*Jackson*
v. *Bodle*, 20 Johns. 184.—*Church* v. *Gilman*, 15 Wend.
656.—*Wheelwright* v. *Wheelwright*, 2 Mass. 447.—*Belden*
v. *Carter*, 4 Day 66.

It is said further by the appellants, that the contract can
not be enforced, because the plaintiffs are infants; and they
rely upon *Story's* Eq. Jur. 787, and *Flight* v. *Bolland*, 4
Russ. 298, for the doctrine that an infant can not sustain
a suit for the specific performance of a contract made by
himself, because the remedy is not mutual.

May Term,
1856.

GUARD
V.
BRADLEY.

Whatever may be the rule upon the subject where the infant has something to do, as to perform a condition on his part, and where the contract on the infant's part has been made by himself alone, without any other intervention, it clearly does not apply where the contract has been made by some one competent to contract, on behalf of the ✓ infant, and a full consideration actually paid. Such are the facts of this case.

The appellants do not make any point in this case, that if the bond is obligatory upon a part only of the grantees in the deeds, it shall be enforced only against them; and when parties do not raise such questions in this Court, we presume they are, in such respect, content with the judgment below. We do not therefore order any modification of the decree, as to the parties against whom the bond shall be enforced.

The decree, however, is erroneous in one particular. In charging the estate conveyed with the burden of this bond, the appellants were ordered to pay to the plaintiffs four-fifths of one-sixth of the value of *the real estate described in the deeds*, after deducting from such value the debts of said *Ezra Guard's* estate. We think the value of the dower of Mrs. *Guard* should have been also excluded; she having declined to sign the deeds. Such was the evident intention to be gathered from the whole transaction.

*Per Curiam.*—To the extent above mentioned, the judgment is reversed, with costs, to be taxed against the next friend of the plaintiffs. The residue of the judgment is affirmed.

*J. Sullivan, D. S. Major* and *A. Brower*, for the appellants.

*J. T. Brown, E. Dumont* and *P. L. Spooner*, for the appellees.