## DEARDORFF and Others *v.* FORESMAN.[*]

PRINCIPAL AND SURETY.—If a surety signs and delivers to his principal an instrument perfect upon its face, with a condition that it shall not be delivered to the obligee, payee or grantee, until some other persons who are agreed upon shall also execute the same, and the principal delivers the instrument without regard to the condition, and the obligee, payee or grantee has no knowledge of the condition, the delivery will bind the surety.

SAME.— PROMISSORY NOTE.— A executed his promissory note, payable to the order of B, and induced C and D to sign the note as sureties, and re-deliver it to him, A, upon the promise that he would procure other persons, named by them, also to execute said note. In disregard of his promise, A delivered the note to B without procuring the additional sureties agreed upon.

*Held,* that the delivery to B was absolute, and that the sureties were liable, without regard to the condition.

APPEAL from the *Tippecanoe* Common Pleas.

RAY, J.—Action by the appellee, upon a promissory note, against *Deeds, Deardorff & Lehman. Deeds* suffered a default. The other defendants answered in two paragraphs. First, that at the date of the note in suit, *Deeds,* who was insolvent, applied to them to execute the note with him, as his sureties, to the plaintiff, which they refused to do; that he fraudulently represented to them that if they would sign the note, he could procure as co-sureties with them eleven other responsible men, who are named, and that he would not deliver the note to the plaintiff until such signatures were procured. That he failed to procure the names he had promised, but delivered the note to the plaintiff. The note was made payable to the order of the plaintiff. The second paragraph of the answer averred the same facts, and was sworn to. The court below sustained a demurrer to both paragraphs. This is here assigned as error.

The appellants insist that the ruling in the case of

[*]This case was decided at the *November* Term, 1865, on a rehearing.

*Pepper* v. *The State,* 22 Ind. 399, requires that the decision of the court below in this case should be reversed. We will consider the case cited only so far as may be necessary to determine its effect upon the question now before us. That case holds that, in an action upon an official bond given to the state, the sureties may defend, either upon the ground that the names of persons appearing to be signed to such bond were forged, and that they executed the bond upon the faith that such signatures were genuine; or that they were induced to execute and deliver the bond to the principal obligor upon the condition, or upon the consideration, or upon the promise, that certain other persons would sign it. It is, however, expressly, said by the judge who delivered the opinion, in overruling the petition for a rehearing, that "we do not say that the same rule that applies to bonds taken pursuant to a statute would apply in private transactions." We are not disposed to extend the effect of that decision to instruments negotiable either by statute or by the law merchant, unless required to do so upon authority or principle. And as the case cited is put rather upon authority than principle, we will consider how far the decisions require us to extend the ruling. Indeed, the opinion given upon overruling the petition for a rehearing rests, except so far as it is based upon the construction of the statute, which construction we are not called upon to review, upon the case of *Bibb* v. *Reid et al,* 3 Ala. 88, which, it is stated in the opinion, "is directly in point, and, after much reflection, we are prepared to say is, in our judgment, good law." That case cites the law as stated thus, in *Sheppard's Touchstone* 59: "So it must be delivered to a stranger; for if I seal my deed and deliver it to the party himself, *as an escrow,* upon certain conditions, &c., in this case, let the form of words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently, and (in reference to the legal operation of the deed,) he is not bound to perform the condition."

The opinion proceeds: "The rule as above stated in the

Touchstone, has been recognized in the *United States*, in the cases cited from 5 Cranch 351, 8 Mass. 230, and 2 Sumner 487; *but it does not appear to obtain at this day in England*, as appears by the case of *Johnson et al.* v. *Baker*, 4 Barn. & Ald. 440, where a composition deed was delivered by a surety who had signed the deed, to a creditor, not to be operative unless all the other creditors executed it. It was held that the deed was delivered as an *escrow*, and that all the creditors not having executed it, the surety was not bound. To the same effect are the cases cited from 3 Wend. 380, 11 Verm. 448, 4 Cranch 219, 2 Harrington 396, 11 Peters 86." The court seem evidently to have misconceived the effect of the decision in the case of *Johnson et al.* v. *Baker*. The creditors were all parties to the deed of composition, and when the debtor alone had executed it, "the deed was then delivered to one of the creditors, in order that he might get it executed by the rest of the creditors." It does not very clearly appear that because an instrument, after being executed by one party, may be delivered to another party to be executed by him, and presented by him to others who are parties to the deed, for their execution, and still not become a deed till executed by all parties, that therefore a deed, perfect in form and execution, may be delivered by the grantor to the grantee as an *escrow.* Nor is the citation of the ruling in *Pawling et al.* v. *United States*, 4 Cranch, as conflicting with the later case of *Moss* v. *Riddle*, 5 Cranch, satisfactory, especially as the later case is in conflict with the doctrine asserted by the *Alabama* court. But we will examine that case more carefully in the course of this opinion, only remarking in passing, that whatever the case in 4 Cranch does decide, which we will endeavor to determine in the subsequent review of the case, it certainly does not hold that a delivery may be made by the obligor of the bond to the obligee, as an *escrow.* Nor does the case of *The United States* v. *Leffler*, 11 Peters, examined hereafter, establish any such doctrine. The case in 3 Wend. 380,

was where a bond had been executed by nine persons as obligors, "and sent to *New York to be delivered* to the plaintiff, on certain terms and conditions, by which the obligors intended to be indemnified for having become bound for the payment of the money. *The plaintiffs refused to receive the bond* on the terms and conditions proposed. Subsequently, on the 29th of *October*, 1824, five of the obligors, but not those sued in the action, without the knowledge or consent of the defendants in this action, having made a new and different arrangement with the plaintiffs, by which the security relied on by the defendants for their indemnity was yielded up, delivered the bond to the plaintiffs." It was held that the bond was not obligatory upon the four who never entered into the new arrangement with the plaintiffs. The bond was dated *September* 21st, 1824, and the plaintiffs had then notice of the terms upon which the delivery was authorized; they refused to receive it upon those terms, but, on the 29th of *October,* made other terms with five of the parties to the bond. The plaintiffs knew the terms on which the delivery was authorized, and refused to accept upon those terms, and the case simply decides that where the extent of the agent's authority is known to the person who deals with him, that the principal cannot be bound outside of that authority. The case is good law, but not specially relevant to the text.

The case cited from 11 Verm. was where the names of seven sureties appeared upon the face of the bond, and only two of the sureties ever executed the same. The instrument was plainly incomplete until executed by all those whose names appeared as parties.

The decision in *Herdman* v. *Bratten*, 2 Harrington, *supra,* was that the deed could not be delivered to the party as an *escrow.* This is an express denial of the doctrine it is cited to sustain. So also the case of *The State* v. *Crisman et al.,* 2 Ind. 126, decides that "a bond cannot be delivered as an *escrow* to the obligee."

Deardorff and Others *v.* Foresman.

In the case of the *Madison, &c., Plank Road Co.* v. *Stevens,* 10 Ind. 1, Mr. Justice PERKINS states the decision thus: "One co-obligor may, perhaps, deliver a bond to another co-obligor as an *escrow,* but an instrument cannot be so delivered to the obligee or payee, or the agent of either. Such delivery is in law absolute. Peters' U. S. Digest, tit. *Escrow; Foley* v. *Cowgill,* 5 Blackf. 18; *The State* v. *Chrisman,* 2 Ind. 126; *Wright* v. *The Shelby, &c., Company,* 16 B. Mon. 5; see 7 Ind. 600; 6 *id.* 183; 9 *id.* 25. And parol evidence cannot be given to vary the legal effect of such delivery, or the terms of the instrument delivered. This has been too often decided to require a citation of authorities to evidence it. *Hiatt et al.* v. *Simpson,* 8 Ind. 256."

The case of *Foley* v. *Cowgill* was for a failure to deliver hogs at a certain time and place, according to a written agreement. The defendant answered that the agreement mentioned "was delivered to the plaintiff as an *escrow,* setting out the contingency on which it was to become binding on the defendant, which, it is averred, had never happened." The court ruled that if the instrument "be delivered to the obligee on such contingency, the condition is a nullity, and the delivery absolute."

And yet, without attempting to overrule or question these cases in our own state, the court, in overruling the petition for a rehearing, rests the decision of the case of *Pepper* v. *The State, supra,* except so far as a construction is given to the statute, upon an *Alabama* case in direct conflict with these repeated rulings of our own court. If the doctrine upon which the *Alabama* case proceeds be the law, that a deed or other written instrument may be delivered to the grantee or obligee as an *escrow,* it of course follows that a surety may make such a delivery to his principal. But, in our opinion, such a position is not only without support, but is in conflict with all authority. In the case of *Worrall* v. *Munn,* 1 Seld. 229, the instrument, an agreement to execute a conveyance, was delivered conditionally to the agent of the party to whom the deed was afterward

to be executed. The court declares that the law puts the question at rest; that the delivery to the agent was a delivery to his principal. "This was a delivery as an *escrow*; such a delivery can only be made to a stranger. It cannot be made to the party. If made to the party, no matter what may be the form of the words, the delivery is absolute." *Ward* v. *Lewis*, 4 Pick. 518; *Fairbanks* v. *Metcalf*, 8 Mass. 230. Mr. Parsons says: "A note, as well as a deed, may be delivered as an *escrow*, and the law of *escrow* is substantially the same in both cases. * * A note cannot be delivered directly to the promisee, to be held by him as an *escrow*." 1 Notes & Bills, 51. *Badcock* v. *Steadman*, 1 Root (Conn.) R. 87.

We will examine the cases cited in the original opinion in the case of *Pepper* v. *The State, supra. Pawling et al.* v. *The United States, supra*, was an action "upon an official bond given by *Ballinger*, as collector of the revenue, and signed and sealed by *Pawling, Todd, Adair* and *Kennedy*, as his sureties, who pleaded that they delivered the same as an *escrow*, to one *Joseph Ballinger*, to be safely kept, &c., upon condition that if *Simon Ingleman and William Patton, named on the face of the bond,* should execute the same as co-sureties, then the bond should be delivered to *James Morrison*, supervisor, on behalf of the *United States*, as their deed, and not otherwise; and that the same never was executed by *Ingleman* and *Patton*." Here the representative of the government had notice, on the face of the instrument, that the same was not complete, not having been executed by all the parties whose names appeared upon its face as co-obligors. To have held this delivery of the instrument obligatory upon the parties, when the writing itself proved the execution to be incomplete, would have been in contradiction of its express terms.

In *The United States* v. *Leffler*, 11 Peters, *supra*, the question under consideration is not discussed either by court or counsel, and the statement of facts does not disclose whether there had ever been any intentional delivery

of the bond, or, if delivered, by whom such delivery was made; and the only question considered was as to the competency of witnesses to prove a conditional execution. Under what circumstances such a defense was admitted does not appear. If the names of other parties appeared on the face of the bond, such a defense would have been admissible under the ruling in *Pawling* v. *The United States, supra.* As no question was made by counsel, it was probably controlled by that decision. If it were otherwise, the validity of such a defense was not so clearly established upon authority, that we are authorized to suppose it would have passed unquestioned when presented in the Supreme Court of the *United States* for the first time.

The case cited from 3 Barr (Penn.) 308, was where a party, in executing a bond, expressly stipulated that it should not be delivered up until twelve names were obtained, and the persons who were procuring names to the bond, for the benefit of third parties, agreed that they would not deliver it until it was so executed. It was held that such bond was in their hands as an *escrow,* and until the condition was performed it could not be delivered. So in the case cited from 2 Leigh 157, where the deputy marshal procured a party to sign a forthcoming bond, taken upon execution, and agreed not to file the bond in court until other persons had signed it, it was held that he could not make a valid delivery until the condition was performed. And again, in 2 John. R. 248, it was held that a sheriff might deliver a deed to an attorney to be held as an *escrow,* and only delivered to his client on compliance with the condition. The case of *Sharp* v. *The United States,* 4 Watts 21, decided that a bond containing in its body two names as sureties, was not binding on one who signed it, unless it was shown that he dispensed with the execution of it by the other. The case in 7 Pick. 91, ruled that "where a bond is signed and sealed, *but not delivered to the obligee,* and it is afterward put into the possession of the obligee by a person who has no authority

to deliver it, the obligee cannot maintain an action on the instrument."

In the case cited from 7 Ohio 375, the court permitted the party receiving the deed to testify that he only received it for the purpose of enabling him to convey to a third party. That the purpose and consideration of the deed was to enable him, as agent of the grantor, to execute a conveyance to another. We are unable to find the case cited, or any case in 4 John. R. having even as remote relation to the subject under consideration as those we have commented upon. In 34 New Hamp. 460, the rule is stated that "if a deed is placed in the hands of a depositary, to be delivered to the grantee upon the death of the grantor, provided it is not previously recalled, but the grantor reserves the right and power of recall at any time, it is not a good delivery."

In 13 Pick. 75, the presumption arising from the fact of a deed having been registered is discussed.

The case cited from 1 Johnson's Cases, decides that "where the grantor held the deed until the consideration should be paid, and died before payment, there was no delivery."

The remaining authorities cited in *Pepper* v. *The State,* *supra,* refer to the question of agency, the decision proceeding, so far as those authorities are relevant, upon the ground that the obligor in a bond is the agent of the obligee, and the obligee is therefore responsible for all his representations to his sureties. It is unnecessary for us to examine these authorities, as the appellant in this case does not assume the position that a person may, as principal, make a valid contract with himself as agent. As a quotation is made from a note by Judge REDFIELD, in the *April* No. 1863, of the Amer. Law Reg., p. 346, which rests upon the case of *Pawling* v. *The United States, supra,* we will cite the opinion of the same author in the *May* No. 1864, of the same magazine, p. 402 : "It seems to us upon principle, that where there is nothing upon the face of the paper indicating that other co-sureties were expected to

become parties to the instrument, and no fact is brought to the knowledge of the obligee, before he accepts the instrument, calculated to put him on his guard in regard to that point, and which would naturally have led a prudent man, interested in the opposite direction, to have made inquiry before accepting the security, the fault cannot be said to rest, to any extent, upon the obligee. And, on the other hand, where the surety intrusts the bond to the principal obligor, in perfect form, with his own name attached as surety, and nothing upon the paper to indicate that any others are expected to sign the instrument in order to give it full validity against all the parties, *he makes such principal his agent to deliver the same to the obligee,* because such is the natural and ordinary course of conducting such transactions; and if the principal, under such circumstances, gives any assurances to the surety, in regard to procuring other co-sureties, or performing any other condition before he delivers the bond, and which he fails to perform, *the surety giving confidence to such assurances must stand the hazard of their performance, and cannot implicate the obligee in any responsibility in the matter, unless he is guilty of fraud or rashness in accepting the security."*

In the note to the *April* No. of the magazine referred to, some authorities are cited as sustaining the application of the doctrine laid down in *Pepper* v. *The State* to "promissory notes, and other contracts not negotiable, or to negotiable contracts before negotiation." The case cited, *Lloyd* v. *Howard,* 1 Eng. L. & Eq. R. 227, was where "A, being the payee and holder of a bill of exchange, wrote his name upon it and gave it to B, for the purpose of getting it discounted. B never paid A any money in respect to the bill, *but kept it until it was overdue,* when he delivered it to C without receiving any value for it. Held, that there was no indorsement by A to B." The fact that C received the bill when over due, could give him no right to insist that the apparent indorsement by A to B should be treated as real. The decision in the case of

*Palmer* v. *Richards, id.* 529, was where "the drawer of a bill of exchange which had been accepted, wrote his name across the back of the bill, and delivered it to A to get discounted, who, instead thereof, while the bill was running, deposited it with B as security for money advanced to himself, without fraud on the part of B. Held, that this was a valid indorsement of the bill by the drawer to B." In the case of *Leaf* v. *Gibbs,* 4 Carr & P. 466, the facts show that the plaintiff, who was the payee of the note, knew that when the defendant signed as surety, the agreement was that his mother was also to sign the note with him, and that she afterward refused, and the confidential clerk of the plaintiff stated to the agent of the defendant and his mother, that the arrangement was, in consequence of such refusal incomplete. The court held that the defendant was not liable, unless he waived the execution of the note by his mother. Where the payee receives the instrument with full knowledge of its incomplete condition, in fact, it would, it seems to us, be a fraud to permit him to take advantage of its apparently perfect condition. The decision in the case of *Awde* v. *Dixon,* 5 L. & Eq. R. 512, also cited, cannot be reconciled with the *American* decisions. Mr. *Parsons* refers to that case as in conflict with the settled law in this country. 1 Bills & Notes 111. The court, to sustain their ruling, declare it to be the law in *England,* that if one signs a negotiable instrument in blank, and delivers it, with authority to fill it up for £100, and it is filled up for £200, and negotiated, the maker will not be liable. Lord MANSFIELD did not thus state the law in *Russell* v. *Langstaffe,* 2 Doug. 514, and in this country such a doctrine is against all authority, and a decision resting upon it cannot be considered, in our courts, as affording any aid in the determination of legal questions. *Fullerton* v. *Sturges,* 4 Ohio State R. 529; 1 Parsons, *supra,* and authorities cited. The decision in *Awde* v. *Dixon* proceeds upon the ground that the writing of the greater sum in the instrument would constitute the crime of forgery, and ALDERSON,

B., placed the decision in the case upon that ground. This is, perhaps, correct under the *English* statute, but the Supreme Court of *Massachusetts*, in *Putnam* v. *Sullivan*, 4 Mass. 45, held otherwise, on the ground that the instrument had been delivered upon a trust, intending that something should afterward be written, to which the name should apply as an indorsement.

Judge REDFIELD, however, seems to have regarded the *English* decision in the case of *Swan* v. *North British, &c. Co.*, 10 Jur. N. S. 102, as conflicting with the view expressed in the note we have quoted from. In that case, "where A was induced by his broker to send him blank forms of transfer, which the broker filled up with numbers and descriptions of shares different from those of the company intended by A, being shares in the defendant's company, and by means of a duplicate key, which he had procured to be made without the knowledge of A, obtained certificates from a box of A's, *necessary* to perfect the transfers, and also forged the names of the attesting witnesses, Held, in an action against the company for damages, and for a *mandamus* to restore the plaintiff's name to the registry, that the acts of the plaintiff were not such as estopped him from showing that the deed of transfer was a forgery." In other words, that where the act of the plaintiff, in trusting the agent with the blank forms of transfer, did not enable the agent to commit a fraud upon a third party, but such fraud could only have been consummated by the addition of larceny and forgery, in such case, the plaintiff was not estopped. We admit that we are unable to understand what decision a court could legitimately render in such a case having any relation to the question now under consideration.

There has also been a case decided by the Supreme Court of *Tennessee*, 5 Humphrey 133, which rests for support upon the cases we have already examined in 4 Cranch and 11 Peters Reports, and in our opinion is not sustained by those authorities. Counsel have cited us also

to the case of *The State* v. *Bodley*, 7 Blackf. 355. There were in that case no questions decided, or discussed by the court, involving any point now under consideration. Nor could such questions have been presented in that case, as the bond, when delivered, contained the name, in the body of the instrument, of the other party who was to execute it, and the clerk who was to receive the bond had actual notice of its imperfect execution, he being the witness called to prove the fact that the sureties signed on condition that the person whose name was with their's in the body of the bond should also execute it.

Since the decision in the case of *Pepper* v. *The State*, the *New York* Court of Appeals has rendered a decision, holding that where a bond is executed by sureties, and delivered to one of their number to keep until also executed by another surety, that the instrument, until so executed, is held as an *escrow*. *The People* v. *Bostwick*, 32 N. Y. R. 445.

*Blackstone* defines a delivery as an *escrow*, to be a delivery "to a *third* person to hold till some conditions be performed on the part of the *grantee*." See also 4 Kent 454; 1 Coke 36 *a*.

In Greenleaf's Cruise on Real Property, book 4, p. 29, it is said: "The delivery of a deed may be either *absolute*, that is, to the grantee himself, or to some person for him, or else *conditional*, that is to a *third* person, to keep it *till something is done by the grantee*; in which last case it is not delivered as a deed, but as an *escrow*." The instrument is as perfect and complete in form when delivered as an *escrow*, as though it were to be delivered absolutely. An instrument delivered as an *escrow* cannot be withdrawn, but remains in the hands of the holder, to be delivered over to the party for whose benefit it was executed, whenever he performs the conditions upon which the original delivery was made. But so long as the instrument remains in the hands of one of the parties, it has no force whatever.

When a decision is based upon so total a disregard of

the essentials constituting the delivery of an instrument as an *escrow*, it may be well to look closely to the authorities which are cited to sustain this line of ruling.

Those authorities are the ones we have already reviewed, with the additional one of *The State Bank* v. *Evans*, 3 Green (N. Jersey) 155, which was a case "where the defendant's name was on the bond as one of the sureties, and he proved that the bond was brought to him by one of his co-sureties, and that when he signed it he delivered it to his co-surety, and said to him, "now this bond is not to be delivered up *until all the persons named in it* have signed it." The court held that the testimony was admissible, and that it overcame the presumption of any legal delivery arising from the mere fact of the obligee having possession of the bond. This is simply another case where the instrument disclosed upon its face that it had not been executed by all the parties. But while citing authorities which, as we have seen, do not sustain the position they are quoted to support, the case of *The People* v. *Bostwick* entirely overlooks a decision rendered a year earlier by the Supreme Court of *Maine*, in which it was held that "where a surety to a bond signs upon the assurance that the principal will procure two other persons, specified and known to such surety, to sign the bond before he delivers the same, which he fails to do, but this is wholly unknown to the obligee at the time he accepts the bond, such surety is bound to perform the obligation."

The case of *Carr et al.* v. *Moore*, 2 Ind. 602, was an action of "debt on a bond given to a school commissioner, signed by A, C and P. As to P the bond was a forgery. The bond was delivered to C, the principal, to be signed and sealed, and it was re-delivered to the commissioner by A and C, perfected. The commissioner was ignorant of the forgery, the name of P having been placed upon the bond after its delivery to C for the signatures. Held, that A was liable on the bond." Mr. Justice Perkins, who delivered the opinion, says: "Had *Carr* (the principal) induced *Athon* (the surety) by fraud, to

execute the bond, still the school commissioner, being ignorant of the fact, could not, we suppose, be affected by it." There was no proof, however, of such fraud, and the expression must therefore be taken, we suppose, rather as the judgment of the writer of the opinion, than as the ruling of the court. But it is certainly entitled to consideration and respect.

The case of *Millett* v. *Parker* et al. 2 Met. (Ky.) 608, reviews the authorities very fully upon this question, and holds that "a conditional delivery to the principal, by a person who subscribes a paper as a surety, will not make such paper a mere *escrow.* The delivery of the paper, to constitute it an *escrow*, must be made to a third person, and not to a co-obligor; and this whether the instrument be assignable or not."

The case of *The State* v. *Chrisman* et al. 2 Ind. 126, was an action of debt upon an administrators's bond. *Nelson*, one of the defendants, filed the following plea, verified by oath: "That the said supposed writing obligatory in the declaration mentioned, was signed by him upon condition that twelve or fifteen other good men signed it, which was not done; and that unless said number of persons did sign it, it was not to be considered his deed." A demurrer was sustained to the answer. The court say: "This plea admits the signature to the bond, and does not deny that the same was delivered to the obligee. When so signed and delivered it became absolute." Upon the face of the bond it appears that the name of *Nelson* was written next following that of the principal, and was followed by the names of six other sureties. The presumption in law is that the names were signed in the order in which they appear upon the instrument, and as the obligee was the State, and the delivery was the filing of the completed instrument with the clerk, no delivery could have been made by *Nelson* to the obligee, upon his signing it. So that the decision of the case results, that no delivery by any of his co-obligors could be made to the obligee of the instrument as an

*escrow*, but the delivery by any of them rendered *Nelson* liable on the bond.

It was also held, in the case of *Taylor & Co.* v. *Craig*, 2 J. J. Marshall 449, that a conditional delivery of a promissory note, by a surety in the note to his principal, did not make the instrument an *escrow*, but that the plaintiff had the right to hold the surety responsible without regard to the condition he had imposed upon the principal at the time of the delivery. *The Bank of the Commonwealth* v. *Curry*, 2 Dana 143, recognizes this as the law. Again, in the case of *Smith* v. *Moberly*, 10 B. Mon. 266, in deciding a similar question, this language is used: "But a delivery of a writing of this character, under such circumstances, to the principal, does not have the effect of characterizing it as a mere *escrow;* but, on the contrary, the principal should be considered as the agent of the surety, and empowered by him to pass the writing to the person to whom it may be made payable, and his delivery as being sufficient to make it effectual, unless the payee had notice of the special terms upon which it was signed. The implied discretionary authority to use the note, arising out of its possession by the principal, uncontradicted by its terms, or anything apparent on its face, cannot be restricted by any agreement between the payors themselves of which the payee had no notice." The Supreme Court of *Vermont* have also "held that where a note payable to a bank was signed by a principal and one surety, with an agreement on the part of the principal with such surety, that he would procure another surety, which was not done, before he procured the note to be discounted, it will constitute no defense, unless the officers of the bank were cognizant of such agreement." *Passumpsic Bank* v. *Goss*, 31 Ver. 315 ; *Dixon* v. *Dixon*, 3 Ver. 450.

It seems clear, on principle, that a surety cannot make a delivery of a bond to his principal as an *escrow*, upon condition that other names shall be procured before its delivery to the obligee. The very definition of an

*escrow* involves the holding of the instrument, complete in form, signed and sealed, prepared for delivery to the obligee, by a third person, who acts as the agent of the obligors and obligee, and who is to make the delivery, not upon some act done by the obligors, but upon the performance of some condition by the obligee. There are but two parties to the instrument, and so long as it is held by the principal it cannot be said to be delivered for any purpose, for it remains still in the hands of the one party, who is only to be bound in any manner upon its delivery to the other. And where there is no delivery of the instrument by the one party executing it, it cannot be said to be held as an *escrow.*

Can a delivery then be made to the principal, as the agent of his sureties, for any other purpose than an unconditional delivery to the obligee?

The interest of the principal is clearly to procure the acceptance of his bond by the obligee, at the earliest moment, and with the least number of sureties. Experience proves, and the law so regards it, that it is a hardship to procure bail, and the interest of the principal is to avoid this hardship. On the other hand, the interest of the sureties is as clear to avoid a delivery until their *pro rata* liability has been reduced by the execution of the bond by other co-sureties.

It is a well established principle of law, that he who has an interest in the doing of a particular act cannot accept an agency in the same matter for others whose interests are adverse to his own. A person will not be permitted to assume an agency for others where the interests of his principal would be in direct conflict with his personal interests. In *Copeland* v. *Mercantile Ins. Co.*, 6 Pick. 198, MORTON, J., says: "It is a rule of law well settled, and founded in the clearest principles of justice and sound policy, that the agent of the seller cannot become the purchaser, or the agent of the purchaser." Judge STORY, in his work on Agency, § 211, says: "For the like reason,

(that is for the same reason that forbids an agent of the seller himself to become the buyer,) an agent of the seller cannot become an agent of the buyer in the same transaction." And again : § 9 "Yet we are to understand that they cannot, at the same time, take upon themselves incompatible duties and characters. * * A memorandum made and signed by a seller, at the request of the purchaser, will not bind." See 3 Parsons on Cont. p. 11; Smith's Mer. Law 149; *Wright* v. *Dannah,* 2 Camp. 203; *Farebrother* v. *Simmons,* 5 B. & A. 333; *Rayner* v. *Linthorne,* 2 C. & P. 124; *Cooper* v. *Smith,* 15 East. 103. In *The Utica Ins. Co.* v. *Toledo Ins. Co.* 17 Barb. 132, it is said : "The general principle that a party cannot act for himself in the same transaction in which he undertakes to act for another is well settled, and the validity of a contract in which he acts, and to which he is a party as agent for a third person, and also in his own behalf, does not depend upon the question whether he makes an advantage by the transaction. * * The character of agent for one party to a contract, and that of principal upon the other part, are incompatible." *Ex parte Bennett,* 10 Vesey 381; *Florence* v. *Adams,* 2 Robinson 556; *Beal* v. *McKinnan,* 6 Louis 407; *Bentley* v. *Columbia Ins. Co.,* 19 Barb. 595.

The law, indeed, makes the principal, for a special purpose, *i. e.,* the delivery of the instrument, the agent of his sureties. Their delivery of the instrument to the principal, after placing their names upon it, authorizes the principal to make the delivery to the obligee, for such is the channel through which the paper would properly pass in reaching the obligee. And the delivery of the instrument to be by him at once transferred to the obligee, is a delivery entirely consistent with the interests and inclination of the principal, and for such a purpose the delivery is proper. The original contract is between the principal on the bond and the obligee. The compliance with the contract is the delivery of the bond by the principal obligor to the obligee, duly executed by himself and his

sureties. The contract between the principal on the bond and his sureties is that they will enable him to comply with his original contract. For this purpose they sign and deliver to him the instrument, that in the fulfillment of his original contract he may deliver it to the obligee.

Now is it not clear, that as the general purpose of the delivery by the sureties to the principal is that he may make a delivery to the obligee, no conditions imposed upon such delivery will bind the obligee unless they are known to him? In the case of *Pickering* v. *Bush*, 15 East. 38, Lord ELLENBOROUGH, C. J., states the law thus : "Strangers can only look to the acts of the parties, and to the external *indicia* of property, and not to the private communications which may pass between a principal and his broker; and if a person authorize another to assume the apparent right of disposing of property in the ordinary course of trade, it must be presumed that the apparent authority is the real authority. I cannot subscribe to the doctrine that a broker's engagements are necessarily, and in all cases, limited to his actual authority, the reality of which is afterward to be tried by the fact. *It is clear that he may bind his principal within the limits of the authority with which he has been apparently clothed by the principal in respect to the subject matter;* and there would be no safety in mercantile transactions if he could not. If the principal send his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale. If the owner of a horse send it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale ? Or if one send goods to an auction room, can it be supposed that he sent them thither merely for safe custody?" And where the surety signs and delivers the bond to the principal, from whom it would naturally pass to the obligee, are we to suppose that such delivery to the principal was merely for safe custody ? The rule laid down in the case cited is, "that where the commodity is sent in such a way and to

such a place, as to exhibit an apparent purpose of sale, the principal will be bound, and the purchaser safe." BAYLEY, J. If the servant of a horse dealer, with express directions not to warrant, do warrant, the master is bound; because the servant, having a general authority to sell, is in a condition to warrant, and the master has not notified to the world that the general authority is circumscribed." And is not the surety upon a bond, who delivers it to his principal in apparent proper condition to be delivered by him to the obligee, and with the general authority to make such delivery, but circumscribed by a condition, unknown to the obligee, bound by the delivery which the principal may make in disregard of the condition? The rule is stated by a learned author thus: "An agent's authority is that which is given by the declared terms of his appointment, notwithstanding secret instructions; or that with which he is clothed by the character in which he is held out to the world, although not within the words of his commission. Whatever is done under an authority thus manifested, is actu-- ally within the authority, and the principal is bound for that reason; for he is bound equally by the authority which he actually gives, and by that which, by his own acts, he appears. to give. * * The appearance of the authority is one thing,. and for that the principal is responsible." 1 Pars. on Cont. 44.. The surety places the instrument, perfect upon its face, in the hands of the proper person to pass it to the obligee, and the law justly holds that the apparent authority with which the surety has clothed him shall be regarded as the real authority, and as the condition imposed upon the delivery was unknown to the obligee, therefore, the benefit of such condition shall not avail the surety.

Thus, in our opinion, should the rule be established upon principle; and as it appears by the examination we have made, that the authorities relied upon to sustain a contrary rule are, in the main, irrelevant, and are in turn quoted to support the cited decisions which are really in point, we are inclined, after a review of all the cases, to regard the real weight of well considered decisions as. sustaining:

the rule which to us seems to rest also upon a correct principle.

So far as the decision of the case of *Pepper* v. *The State, supra,* rests upon the construction of the statute, and upon the fact of forgery, we are not called upon to review it.

The action of the court below upon the demurrer was correct.

The judgment in this case is affirmed, with one-eighth of 1 per cent. damages, and costs.

*H. W. Chase* and *J. A. Wilstach,* for appellants.

*John Pettit,* for appellee.

NOTE.—The counsel for appellant cited *Pepper* v. *The State,* 22 Ind. 399; *Awde* v. *Dixon,* 6 Exc. 869; *Leaf* v. *Gibbs,* 4 C. & P. 466; *Johnson* v. *Baker,* 4 B. & A. 440; *The State* v. *Bodly,* 7 Blk. 355.

Appellee cited *Millett* v. *Parker,* 2 Met. (Ky.) 608; 1 Bouv. Inst. 345; 2 *id.* 396.